UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM BIALEK,                          Case No. 20-11508

               Plaintiff,               Gershwin A. Drain
    v.                                   United States District Judge

ANDREW SAUL                              Curtis Ivy, Jr.
COMMISSIONER OF SOCIAL                   United States Magistrate Judge
SECURITY,

            Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 11, 13)**

Plaintiff William Bialek ("Plaintiff") brings this action pursuant to 42 U.S.C.

§ 405(g), challenging the final decision of Defendant Andrew Saul, Commissioner

of Social Security ("Defendant" or "Commissioner") denying his application for

disability insurance benefits under the Social Security Act (the "Act"). This matter

is before the United States Magistrate Judge for a Report and Recommendation on

Plaintiff's motion for summary judgment (ECF No. 11), the Commissioner's cross-

motion for summary judgment (ECF No. 13) and the administrative record (ECF

No. 8).

For the reasons that follow, it is **RECOMMENDED** that the Court **DENY**

Plaintiff's motion for summary judgment (ECF No. 11), **GRANT** Defendant's

motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner's decision.

## I.    DISCUSSION

### A.    Background and Administrative History

Plaintiff alleges his disability began on June 19, 2015, at the age of 47. (ECF No. 8, PageID.92).  He filed an application for Title II, disability insurance benefits, on September 11, 2017.  (*Id.* at PageID.176-77).  In his disability report, he listed major depression disorder, manic depressive disorder, bipolar disorder, major anxiety, panic attacks, catatonic depression, agoraphobia, precancer polips in colon, chronic diarrhea, irritable bowel syndrome, and meniscus tears/arthritis in his knees as the injuries and conditions that limited his ability to work.  (*Id.* at PageID.92-93, 191).

Plaintiff's application was initially denied on October 30, 2017.  (*Id.* at PageID.52, 107).  On December 21, 2017, he requested a hearing before an Administrative Law Judge ("ALJ").  (*Id.* at Page ID.52, 116).  On February 19, 2019, ALJ Paul W. Jones held a hearing, at which Plaintiff and Toni McFarland, the vocational expert ("VE") in the matter, testified.  (*Id.* at PageID.64-91).  On March 28, 2019, ALJ Jones issued an opinion, which determined Plaintiff was not disabled under sections 216(i) and 223(d) of the Act from June 19, 2015 through December 31, 2016.  (*Id.* at PageID.52, 59).

Plaintiff submitted a request for review of the hearing decision.  (*Id.* at PageID.36).  However, on April 6, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.*).  Thus, ALJ Jones's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on June 10, 2020. (ECF No. 1).

### B.   Plaintiff's Medical History

1. <u>Physical Impairments</u>

a.  Obesity

On March 2, 2016, Plaintiff saw Dr. Erika Giordano, D.O., at Premier Family Medicine.  (ECF No. 8, PageID.378).  The March 2, 2016 medical notes indicate Plaintiff had a "very mild" joint effusion palpated at the bilateral knees and ambulated normally despite some recent weight gain.  (*Id.* at PageID.378-80). The treatment recommendation was for Plaintiff to lose weight in order to address his knee issues.  (*Id.* at PageID.384).  Other than  palpated elbow pain, which worsened following Plaintiff working on his car, his exams were generally unremarkable and the treatment recommendations mostly comprised of prescription medication.  (*Id.* at PageID.383-85).

During the next visit on October 18, 2016, Plaintiff's medical records noted he gained weight following the previous visit and had "limited ambulation."  (*Id.* at PageID.383).  The physician again recommended weight loss to alleviate some of

the stress on his joints.  (*Id.* at PageID.384).  During Plaintiff's November 11, 2016 visit, he reported feeling numbness in relation to his knees but was able to ambulate normally.  (*Id.* at PageID.388-89).

The November 22, 2016 medical notes reflect Plaintiff's complaint of his left knee being "really bad," his right hip beginning to "bother[] him" and numbness related to his knee.  (*Id.* at PageID.393-94).  However he was able to ambulate normally.  (*Id.*).  Plaintiff's December 14 and December 16, 2016 medical notes both indicate Plaintiff was ambulating normally.  (*Id.* at PageID.398, 403).

### b.  Left Knee Osteoarthritis

In June 2014, Plaintiff underwent an arthroscopic partial medial meniscectomy and removal of a meniscal cyst from his left knee.  (*Id.* at PageID.300).  During his January 6, 2015 visit at DMC Sports Medicine, Dr. Todd Frush, Plaintiff's surgeon, noted Plaintiff was experiencing some tenderness around the knee area but overall did not note any complications as a result of the surgery or subsequent medical treatments.  (*Id.*).  Further, Plaintiff had full range of motion and 5/5 strength with knee flexion and extension.  (*Id.* at PageID.301).  During the visit, Plaintiff also received bilateral knee injections which helped manage his arthrosis type complaints.  (*Id.* at PageID.298, 300-01).

Plaintiff's Premier Family Medicine records from March 2016 indicate he had osteoarthritis in his left knee. (*Id.* at PageID.378). His knees were swollen and puffy and he complained of being in constant pain. (*Id.* at PageID.379). He informed Dr. Giordano that a University of Michigan doctor told him his knees were full of arthritis and there was "nothing he could do." (*Id.*). The record also notes he had "very mild joint effusion palpated b/l knees" but was ambulating normally. (*Id.* at PageID.379-80).

On October 18, 2016, Plaintiff complained that he felt "like a train wreck," was experiencing numbness which was progressive on his knee and felt as if his knees continued to deteriorate. (*Id.* at PageID.382, 384). Plaintiff was observed with limited ambulation. (*Id.* at PageID.383). Again, it was recommended Plaintiff lose weight to alleviate some stress on his joints. (*Id.* at PageID.383-84). Less than a month later, during a November 11, 2016 visit, Plaintiff was observed ambulating normally. (*Id.* at PageID.389). Further, his gait and station were noted as normal. (*Id.* at PageID.389-90).

During Plaintiff's next visit on November 22, 2016, he complained his left knee was "really bad" and his right hip was beginning to bother him. (*Id.* at PageID.393). Nevertheless, he was observed ambulating normally. (*Id.* at PageID.394). Similarly, during December 14 and December 16, 2016 office visits, he was noted as ambulating normally. (*Id.* at PageID.398, 403).

5

c.  Gastroesophageal Reflux Disease & Diverticulitis

In January 2015, Plaintiff complained of abdominal pain and underwent a colonoscopy to assess the issue.  (*Id.* at PageID.370).  The postoperative diagnosis was a "[n]ormal terminal ileum, isolated sigmoid diverticula, [and] a sessile large distal rectal polyp."  (*Id.*).  In April 2015, the results of an endoscopy performed on Plaintiff revealed small internal hemorrhoids, two miniscule sessile polyps measuring 1 mm each, but no evidence of any inflammatory changes.  (*Id.* at PageID.363).  During the same month, Plaintiff's final pathologic diagnoses in regard to his small bowel, colon, esophagus and stomach were mild.  (*Id.* at PageID.357).  Significant abnormalities in relation to those organs were not detected.  (*Id.*).

In March 2016, Plaintiff's medical records from Premier Family Medicine noted Plaintiff had gastroesophageal reflux disease ("GERD").  (*Id.* at PageID.378, 380).  On November 30, 2016, Plaintiff treated with Dr. Alexander Stojanovic at Oakland Gastroenterology Associates PC.  (*Id.* at PageID.316, 319).  The medical visit notes indicate Plaintiff's abdomen was soft and nondistended.  (*Id.* at PageID.318).  Further, there was no abdominal tenderness, rebound or guarding.  (*Id.*).  Dr. Stojanovic recommended a mild treatment plan for Plaintiff consisting of: (i) undergoing another colonoscopy in a year, (ii) continuing to take omeprazole; (iii) undertaking dietary changes; and (iv) avoiding alcohol

consumption.  (*Id.* at PageID.319).  On December 14, 2016, during a visit at

Premier Family Medicine, Plaintiff complained of abdominal pain.  (*Id.* at

PageID.399).  Similar to Dr. Stojanovic,  the treatment recommendations provided

by Premier Family Medicine for Plaintiff's GERD and diverticulitis were

conservative in nature (e.g., prescription medication or high fiber diet).  (*Id.* at

PageID.346).

        2. <u>Mental Impairments</u>

        a. Anxiety

Dr. Jeri Kedzierski treated Plaintiff over the course of several years for his

depression, anxiety, panic disorder and agoraphobia.  (*Id.* at PageID.306-315).

During a November 20, 2015 visit with Dr. Jeri Kedzierski Plaintiff reported

feeling stressed following the loss of his job.  (*Id.* at PageID.308).  His treatment

was adjusted accordingly.  (*Id.*).  A few months later, Premier Family Medicine's

March 2, 2016 records identified anxiety as a condition Plaintiff was suffering

from.  (*Id.* at PageID.417-18).  He also reported experiencing low self-esteem, high

irritability and decreased effectiveness/productivity.  (*Id.* at PageID.418).  During

the visit, he admitted the use of EtOH was helping with his anxiety.  (*Id.* at

PageID.379).  Further, while Plaintiff appeared anxious, the records note he was

only moderately distressed.  (*Id.* at PageID.418).

On June 3, 2016, Plaintiff returned to Dr. Kedzierski and reported that EMS came to his house two weeks prior due to a panic attack.  (*Id.* at PageID.307). Plaintiff was anxious and had racing thoughts.  (*Id.*).  On June 30, 2016, Dr. Kedzierski noted Plaintiff felt that Risperdal was helping his condition.  (*Id.* at PageID.306).  Despite feeling anxious and worried he felt more accomplished. (*Id.*).  Over the course of his treatment with Dr. Kedzierski, during the relevant time period, Plaintiff's treatment plan remained generally conservative.  (*Id.* at PageID.306-08).

On October 10, 2016, during a follow up visit at Premier Family Medicine, the medical professional noted Plaintiff had "a lot of outside variables" that made him depressed and anxious.  (*Id.* at PageID.383).  The November 11, 2016 Premier Family Medicine's records indicate that while Plaintiff's mental state was anxious, he had a mild level of distress.  (*Id.* at PageID.389).  Further, his recent and remote memory were noted as normal.  (*Id.*).  On November 22, 2016, Plaintiff's Premier Family Medicine records identified Plaintiff as being only mildly distressed.  (*Id.* at PageID.394).  His mental state was noted as anxious but his recent and remote memory were again both normal.  (*Id.*).  Further, Dr. Stojanovic's November 30, 2016 medical notes reveal Plaintiff reported "no depression or anxiety."  (*Id.* at PageID.318).

During a December 14, 2016 Premier Family Medicine office visit, Plaintiff's level of distress was recorded as moderate and his mental state was anxious.  (*Id.* at PageID.398).  However, on December 16, 2016 Plaintiff was reported as having mild distress and being a bit anxious and agitated.  (*Id.* at PageID.403).  The agitation subsided as the appointment continued.  (*Id.*).  The medical record also noted that his bipolar disorder was established and worsening. (*Id.* at PageID.404).

### b.  Depressive Disorder

In November 2015, Plaintiff saw Dr. Kedzierski and expressed that he was very stressed.  (*Id.* at PageID.308).  Dr. Kedzierski considered whether Plaintiff's latest feelings were related to a major depressive disorder or bipolar disorder. (*Id.*).  He adjusted Plaintiff's treatment plan by increasing Plaintiff's Lamictal prescription and starting him on Xanax.  (*Id.*).

On October 18, 2016 and November 11, 2016, during follow up visits at Premier Family Medicine, the medical professional noted Plaintiff reported depression and sleep disturbances.  (*Id.* at PageID.383).  However, Dr. Stojanovic's November 30, 2016 medical notes reveal Plaintiff reported "no depression or anxiety."  (*Id.* at PageID.318).

### C.    The Administrative Decision

Pursuant to 20 C.F.R. § 404.1520(b), at Step 1 of the sequential evaluation

process, ALJ Jones found Plaintiff had not engaged in substantial gainful activity from June 19, 2015, the alleged onset date, through December 31, 2016, his date last insured ("DLI").  (*Id.* at PageID.54).  Through his DLI, Plaintiff had the following medically determinable impairments: obesity, left knee osteoarthritis, gastroesophageal reflux disease (GERD), diverticulitis, depressive disorder and anxiety disorder.  (*Id.*).  At Step 2, ALJ Jones found that through the DLI, Plaintiff "did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, claimant did not have a severe impairment or combination of impairments."  (*Id.*).  Thus, ALJ Jones concluded Plaintiff "was not under a disability, as defined in the Act, at any time from June 19, 2015, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(c))."  (*Id.* at PageID.58).

### D.    Framework for Disability Determinations

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: (1) worked during

the alleged period of disability; (2) has a severe impairment; (3) has an impairment that meets or medically equals the requirements of an impairment listed in the regulations; (4) can return to past relevant work; and (5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §§ 404.1520, 416.920. The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the Plaintiff's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . .")). Under this standard, "substantial evidence is defined as '*more than a scintilla of evidence but less than a preponderance*; it is such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)(emphasis added)).  In deciding whether substantial evidence supports the

ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in

evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509

(6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the

reviewing court, to evaluate the credibility of witnesses, including that of the

claimant.").

 Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273

(6th Cir. 1997).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

The Court's review is limited to an examination of the record only. *Bass v.*

*McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Foster v. Halter*, 279 F.3d 348,

357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for

substantial evidence, a reviewing court must consider the evidence in the record as

a whole, including evidence which might subtract from its weight. *Wyatt v. Sec'y*

*of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001). Neither the ALJ nor the Court is required to

discuss every piece of evidence contained in the administrative record. *Kornecky*

*v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[a]n ALJ can

consider all the evidence without directly addressing in his written decision every

piece of evidence submitted by a party.") (internal citation marks omitted); *see also*

*Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

F.    **Analysis and Conclusion**

ALJ Jones determined Plaintiff's mental and physical impairments,

considered individually or in combination, did not "significantly limit Plaintiff's

ability to perform basic work activities." (ECF No. 8, PageID.58). Thus, Plaintiff

did not have a severe impairment or combination of impairments.  (*Id.*).

Plaintiff argues the Commissioner's decision (i) was not supported by substantial evidence and (ii) does not reflect the application of the proper legal standards.  (ECF No.11, PageID.763).  Plaintiff argues ALJ Jones afforded too much weight to the opinion of William Norton, Ph.D., State agency medical consultant, as Dr. Norton apparently relied upon post-DLI records which indicated Plaintiff's mental status examinations were largely within normal limits.  (*Id.* at PageID.777-78).  Plaintiff also argues at certain points ALJ Jones failed to discuss relevant portions of Plaintiff's medical record (e.g., Plaintiff was assigned a GAF score between 45-50 on March 31, 2017).  (*Id.* at PageID.778).  In sum, ALJ Jones's "failure to discuss the objective findings from the same records upon which Dr. Norton primarily relied denote[d] a lack of substantial evidence where [the] records documented the clinicians' observed manifestation of depression and anxiety which were consistent with Bialek's complaints."  (*Id.* at PageID.779).

Plaintiff further argues ALJ Jones's conclusion was incorrect as he did not consider alternate reasons why Plaintiff stopped seeking mental health treatment (*id.* at PageID.782), inappropriately considered Plaintiff's work history prior to June 2015 (*id.* at PageID.783), and inappropriately considered Plaintiff's actions of applying for other jobs after he was terminated in 2015 as a good reason to find that his conditions were not severe (*id.* at PageID.784).

The Commissioner contends the administrative record demonstrates ALJ Jones's final decision that Plaintiff's impairments were non-severe was supported by substantial evidence. (ECF No. 13, PageID.790). The Commissioner explained that in addition to relying on Dr. Norton and Alyce Metoyer's, D.O., opinions, ALJ Jones also emphasized Plaintiff's conservative treatment, robust daily activities and generally normal examination findings to support his conclusion that Plaintiff's impairments were non-severe. (*Id.* at PageID.798-97). Further, the evidence Plaintiff proffers to support his position that ALJ Jones's conclusion is not supported by substantial evidence is derived "primarily from sources who only began treating Plaintiff after the relevant period, and whose opinions were neither explicitly nor implicitly retrospective." (*Id.* at PageID.797). Moreover, ALJs are permitted to rely upon opinions offered by State agency psychological consultants, such as Dr. Norton, to the same extent they rely upon opinions from other sources as State agency psychological consultants are experts in disability evaluation. (*Id.* at PageID.798).

Second, the Commissioner argues ALJ Jones's rejection of Dr. Garcia and LCSW Shuler's respective opinions "was reasonable and justified, since neither source treated Plaintiff during the relevant period." (*Id.* at PageID.799.). Further, the presence of Plaintiff's low GAF score is not sufficient to undermine Dr. Norton's opinion. (*Id.* at PageID.802). In addition, Plaintiff's argument that ALJ

15

Jones's finding is erroneous as he failed to discuss Plaintiff's depression and anxiety is unsupported by the opinion which contains numerous references to both conditions. (*Id.* at PageID.803).

The Commissioner also contends Plaintiff has not established error in ALJ Jones's consideration of his mental treatment as the record shows Plaintiff (i) was insured for the most part during the relevant period, (ii) in general, consistently engaged in mental health treatment during the relevant period, and (iii) provided no evidence that he attempted to obtain low-cost or free care during the points when he was uninsured. (*Id.* at PageID.805-06). Lastly, the Commissioner argues Dr. Norton's consideration of Plaintiff's pre-June 2015 work history is not entirely inappropriate as Dr. Norton reviewed the records "stretching from June 2014 through July 2017 and found that Plaintiff's overall functioning was within normal limits and that the evidence did not support the full extent of Plaintiff's allegations." (*Id.* at PageID.807).

Plaintiff replies that the reason he stopped seeking psychological treatment is a question of fact to be considered by ALJ Jones and not the Commissioner. (ECF No. 14, PageID.811). Further, Plaintiff contends the Commissioner's reasoning as to why ALJ Jones considered Plaintiff's earning capacity does not explain the relevancy to his alleged disability at issue in the case. (*Id.* at PageID.812). Lastly, Plaintiff argues Dr. Norton's finding that "'all' of Plaintiff's

medical records showed that he was functioning within normal limits" was false and that Dr. Norton's assessment relied mostly on post-DLI records. (*Id.* at PageID.814-15).  Thus, ALJ Jones's decision was unsupported by substantial evidence as it relied upon Dr. Norton's opinion. (*Id.* at PageID.815).

    1.  <u>Substantial Evidence Supports ALJ Jones's Conclusion</u>

The undersigned finds no error in ALJ Jones's decision.  At step two of the sequential evaluation process, the ALJ must consider whether a claimant's medically determinable impairments(s) are severe impairments and whether the impairments(s) meet the twelve-month durational requirement in 20 C.F.R. § 404.1509.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see also Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 188 (6th Cir. 2009) ("At step two, if a claimant does not have a severe medically determinable physical or mental impairment . . . that meets the durational requirement in §404.1509 . . . , or a combination of impairments that is severe and meets the durational requirement, then [he] is not disabled.").  The applicant bears the burden of establishing the existence of objective medical evidence within the administrative record suggesting that the applicant was "disabled" as defined by the Act.  In order to be classified as severe, an impairment or combination of impairments must scientifically limit the claimant's physical or mental ability to do basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Basic work activities, defined in

the regulations as "the abilities and aptitudes necessary to do most jobs," include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, coworkers, and usual work situations; and (6) dealing with changes in routine work settings.

In *Higgs v. Bowen*, the Sixth Circuit found that "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." 880 F.2d 860, 862 (6th Cir. 1988). The *Higgs* court observed "this lenient interpretation of the severity requirement in part represents the courts' response to the Secretary's questionable practice in the early 1980s of using the step two regulation to deny meritorious claims without proper vocational analysis." *Id*. At the same time, the court also recognized that "Congress has approved the threshold dismissal of claims obviously lacking medical merit. . . ." *Id*. That is, "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint." *Id*. at 863. The *Higgs* court approved of that practice and affirmed dismissal because the record contained no objective medical evidence to support the plaintiff's claims of severe impairment. The *Higgs* court observed that "[t]he mere diagnosis of [an ailment], of course,

says nothing about the severity of the condition."  *Id*; *see also Despins v. Comm'r of Soc. Sec.*, 257 F. App'x 923, 930 (6th Cir. 2007) (citations omitted) (Nonetheless, not all impairments are severe: "The mere existence of . . . impairments . . . does not establish that [the claimant] was significantly limited from performing basic work activities for a continuous period of time.").

As observed in *Sponsler v. Comm'r of Soc. Sec.*, 2018 WL 1173019, *8 (N.D. Ohio Mar. 6, 2018), the Sixth Circuit has regularly found substantial evidence to support a finding of no severe impairment if the medical evidence contains no information regarding physical limitations or the intensity, frequency, and duration of pain associated with a condition.  *See e.g.*, *Long v. Apfel*, 1 F. App'x 326, 332 (6th Cir. 2001); *compare Maloney v. Apfel*, 2000 WL 420700, at *2, (6th Cir. 2000) (*per curiam*) (finding substantial evidence to support denial when record indicated claimant showed symptoms and was diagnosed with disorder but did not contain evidence of a disabling impairment that would prevent work); *and Foster v. Sec'y of Health & Human Servs.*, 1990 WL 41835 at *2 (6th Cir. 1990) (per curiam) (finding substantial evidence to support denial when the claimant produced no evidence regarding the frequency, intensity, and duration of arthritic pain; the record indicated that he was no more than slightly or minimally impaired); *with Burton v. Apfel*, 2000 WL 125853 at *3 (6th Cir. 2000) (reversing finding of no severe impairment because record contained diagnoses and remarks

from a number of treating physicians and psychologists to the effect that claimant was "'unable to work . . .due to the complexity of her health problems'" (quoting physician)); *and Childrey v. Chater*, 1996 WL 420265, at *2 (6th Cir. 1996) (per curiam) (reversing finding of no severe impairment because record contained an assessment by a consulting physician reflecting a variety of mental problems that left her "'not yet able to really care for herself alone,'" reports of two other physicians corroborating this, consistent testimony from the claimant, and no medical evidence to the contrary (quoting physician)).

In this case, the record evidence does not suggest that Plaintiff's conditions rendered him unable to perform basic work activities. While the Premier Family Medicine records included notations observing Plaintiff's obesity, osteoporosis, GERD, anxiety, and depression, the records did not indicate that the conditions were severe enough to prohibit Plaintiff from performing basic work activities. Similar to *Maloney*, the medical record in this case is void of any medical notes stating that Plaintiff was unable to care for himself or preform basic daily or work-related activities. *Maloney*, 2000 WL 420700 at *2 (finding substantial evidence to support denial when record indicated claimant showed symptoms and was diagnosed with disorder but did not contain evidence of a disabling impairment that would prevent work). In fact, in regard to Plaintiff's physical impairments, on multiple occasions Plaintiff was instructed to maintain the same or a similar

conservative treatment regimen throughout the alleged disability period and observed ambulating normally.  (ECF No.8, PageID.378-80, 383-85, 398). Further, the medical record indicates Plaintiff in fact engaged in basic work activities during the alleged period of disability (e.g., working on his car).  (*Id.* at PageID.382-83).  The record also contains notations that Plaintiff's recent and remote memory were normal.  (*Id.* at PageId.389).

In regard to Plaintiff's mental impairments, the record indicates Plaintiff's distress was usually observed as mild and he was anxious.  (*Id.*, PageID.389, 394, 403).  While the record contains a few instances where Plaintiff's distress was observed as moderate (*id.* at PageID.398) and an instance where he was noted as being "hyperverbal" (*id.*) this is insufficient to find that substantial evidence does not exist to support the ALJ's decision.  *Blakley*, 581 F.3d at 406 ("[I]f substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'").  Moreover, at times during his sessions with Dr. Kedzierski, Plaintiff expressed that the medical treatment he was receiving was helping his mental condition.  (*Id.* at PageID.306).  Further, despite his feelings of anxiety and worry, he felt more accomplished.  (*Id.*).  Notably, at his November 30, 2016 office visit with Dr. Stojanovic the medical notes show Plaintiff did not report suffering from depression or anxiety.  (*Id.* at PageID.316, 319).  Lastly, Plaintiff's own

testimony regarding his ability to live on his own (*id.* at PageID.70-71), read, write and do simple math (*id.* at PageID.72), and obtain and maintain health insurance on his own (*id.* at PageID.73) support ALJ Jones's finding that his conditions do not qualify as severe impairments under the Act.

Plaintiff's motion for summary judgment identifies a few factors he alleges ALJ Jones (i) failed to consider to support finding his conditions qualified as severe impairments (e.g., alternate reasons why Plaintiff stopped seeking mental health treatment and Plaintiff's GAF score) and (ii) should not have considered to support finding his conditions did not qualify as severe impairments (e.g., Plaintiff's past earnings and his actions of applying for jobs following his termination in 2015).  (ECF No. 11, PageID.782, 778, 783-84).  Plaintiff's argument is not persuasive as the ultimate question before the Court is whether substantial evidence exists in the record to support ALJ Jones's finding that Plaintiff's conditions do not qualify as severe impairments and was the decision made pursuant to proper legal standards.  *Rabbers*, 582 F.3d at 651 (quoting *Rogers*, 486 F.3d at 241).  Based on the undersigned's review of the record, substantial evidence exists to support ALJ Jones's decision.

   2.  <u>ALJ Jones's Decision not to Consider Plaintiff's Post-DLI Medical Source Statements was Appropriate</u>

The undersigned does not find that the existence of substantial evidence to support ALJ Jones's ultimate finding that Plaintiff's conditions did not qualify as

severe impairments was undermined by his decision not to consider the medical source statements of Dr. Garcia and LCSW Shuler because they "fell well outside the period under review" while including references in his opinion to portions of the medical record which fell within the same period (e.g., Plaintiff's post-2016 mental health treatment records). (ECF No. 8, PageID.57-58). When ALJ Jones's opinion and record are reviewed as a whole, as they should be, it is apparent that substantial evidence is present in the medical record and Plaintiff's testimony to support ALJ Jones's opinion that Plaintiff's conditions were not severe impairments. *Helton v. Berryhill*, 2018 WL 5986747 at *3 (E.D. Ky. Nov. 14, 2018) (plaintiff's contention that the ALJ failed to consider whether her headaches were a severe impairment was not supported by review of the ALJ's entire written decision).

The record, as outlined above, supports ALJ Jones's finding that Plaintiff's conditions were not severe impairments and Plaintiff "was not under a disability, as defined in the Act, at any time from June 19, 2015, the alleged onset date, through December 31, 2016, the date last insured (20 CFR 404.1520(c))." (ECF No. 8, PageID.58). Thus, the undersigned recommends that the court affirm the ALJ's finding as there is substantial evidence to support his decision.

## G. Conclusion

Plaintiff has the burden of proof on his statements of error. *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). Plaintiff has not shown legal error that would upend the ALJ's decision. For the foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 11), **GRANT** Defendant's motion for summary judgment (ECF No. 13), and **AFFIRM** the Commissioner of Social Security's decision.

## II. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the

same order, and labeled as "Response to Objection No. 1," "Response to Objection

No. 2," etc.  If the Court determines that any objections are without merit, it may

rule without awaiting the response.

Date: May 3, 2021                             s/Curtis Ivy, Jr.
                                              Curtis Ivy, Jr.
                                              United States Magistrate Judge